Nicholsok, C. J.,
delivered the opinion of the Court.
About the 2d of January, 1860, James M. Sheid, being pressed for ready money to satisfy an execution from the Federal Court, against Rayburn & Co., which he had assumed to pay, applied to "VYm. P. Hickerson, then in Nashville, to become his accommodation indorser on a *332 bill of exchange, for $2,500, payable at thirty days; saying that the Cashier of the Planters’ Bank had promised him to discount it that day, if he presented a bill properly indorsed. Hickerson hesitated about indorsing, but finally consented, and indorsed the bill upon the express condition that, if the bill was not discounted that day by the Planters’ Bank, Sheid was either to return the bill or destroy it. This occurred in the afternoon, and on the next morning Plickerson left for his home in Coffee County. Sheid presented the bill at the Planters’ Bank the same evening, but the Cashier refused to discount it; whereupon Sheid went to J. B. Clemments, United States Marshal for Middle Tennessee, informed him that he had such a bill, and told him the terms and conditions on which Hickerson had indorsed it. Pie then proposed to Clem-ments, who had the executions in favor of Baiguel & Co., against Bayburn & Co., which Sheid had assumed to satisfy, that he would transfer to him, as the agent of Baiguel & Co., the bill of exchange in satisfaction of the executions. Clemments consulted the counsel of Baiguel & Co., who advised him to accept the proposition. Accordingly, Clemments took the bill of exchange, and entered upon the executions a receipt in full satisfaction. The amount of the two executions was about $2,200, and Clemments agreed that when the bill was collected he would refund the excess to Sheid.
The bill was dishonored at maturity, and suit brought thereon to the September Term, 1860, against Sheid and the two indorsers, Hickerson and Estell. The indorsers made no defense, and permitted judgment to be entered against them at the Appearance Term, and thereupon took *333 judgment by motion against Sheid; and at the May Term, 1861, Raiguel & Co., took judgment against Sheid on the bill.
No execution issued on this last named judgment, until January, 1863, when one was issued, and levied on a tract of land belonging to Sheid, estimated to be worth $4,000. After the levy on the land, Sheid paid, in Confederate currency, the amount of the execution to the Sheriff of Coffee County, who receipted and satisfied the execution. Sheid thereupon sold and conveyed the land, and became insolvent. When the Sheriff tendered the money received on the execution, to the counsel of Raiguel & Co., they refused to receive it; whereupon, they caused execution to issue against Hickerson on the judgment rendered against him as indorser at the September Term, 1860.
The bill is filed by Hickerson to enjoin the execution so issued.
The first question for determination, is, whether injustice was done to complainant by the judgment rendered by the Circuit Court, at the September Term, 1860. It appears that he made no defense, but permitted judgment to be entered at the appearance term without objection. This is conclusive against his application for relief, unless he had a good defense, and failed to make it on account of accident, or fraud, or the action of the opposite party, unmixed with negligence or fault on his own part. Kearny v. Smith, 3 Yer., 127.
The proof shows that when complainant indorsed the bill, he did so upon the express condition that if the Planters’ Bank did not discount the bill on that day, his liability as indorser was to cease, and the bill was • either *334 to be • returned or destroyed. It is wholly immaterial whether complainant knew the use which Sheild proposed to make of the money, or not. He was indorsing without consideration, and for the accommodation of Sheid, and had the right to annex such terms and conditions to his liability as he • saw proper. Perkins v. Ament, 2 Head, 110; Bank of Tennessee v. Johnson, 1 Swan, 217. It is clear that when the Planters’ Bank refused to discount the bill, and the day had expired during which it was to be presented, the liability of complainant was terminated. The only liability which could then be created must have arisen from the transfer of the bill, in the due course of trade, to some innocent purchaser, for value. But the proof shows that when Sheid offered to transfer the bill to Clemments, who was acting as the agent of Kaiguel & Co., in the collection of their execution, he informed him of the terms and conditions which complainant had annexed to his indorsement. It follows, that Clemments took the bill with full notice that Sheid had no authority to use it for any purpose and in any way. As Clemments was acting as the agent of Kaiguel & Co., they would be affected with the notice which their agent had.
But the proof further shows that the bill was taken by Kaiguel & Co. in payment of a claim which they had against Kayburn & Co., and which claim Sheid had undertaken, by<.contract with Kayburn & Co., to pay. The bill, therefore, was received in payment of a pre-existing debt, and was' taken, subject to all the equities and defenses which the indorser could lawfully set up against the liability in the hands of Sheid. 8 Hum., 127; 2 *335 Head, 270; Meigs’ R., 155; 1 Head, 517; 3 Hum., 51; 5 Sueed, 443; 3 Head, 178.
It follows, that if complainant had made his defense in the suit at law, he would have had the right to rely upon the fraud practiced upon him by Sheid, in transferring the bill without authority,, and in violation of the terms and conditions of his indorsement; and, under the law, a verdict and judgment, upon the facts disclosed in the record, must have been rendered in favor of complainant. The injustice of the judgment against him is thus made manifest.
But it is not enough that the judgment was unjust. It must also appear by the proof, that complainant, without negligence or fault upon his part, was prevented by accident, fraud, or the action of the opposite party, from making his defense, before he can entitle himself to relief against the judgment. The excuse on which he relies for allowing judgment to be taken without defense, is, that at the time the judgment was rendered against him, in September, 1860, he was under the impression that the bill had been discounted by the Planters’ Bank, and that he was bound by his indorsement. It was under this conviction that he permitted judgment to be taken at the appearance term. He states further, both in his bill and in his deposition, that the first information or knowledge that he acquired as to the refusal of the bank to discount the bill, and the fraudulent diversion thereof by Sheid, was derived after the judgment was rendered in May, 1861, against Shied. The truth of this explanation of his failure to make his defense is fully established by the proof. It follows, that when the judgment was rendered *336 against him in September, 1860, he was unable to make his defense, because of the fact that Shied had concealed and withheld from him, the fraudulent use which he had made of his indorsement. It was impossible for him to avail himself of a defense, of the existence of which he had no knowledge. The facts constituting his defense rested alone in the knowledge of defendant’s agent, Clem-ments and Sheid, who had perpetrated the fraud, and by both it was withheld from complainant until after the judgment in the Circuit Court. This circumstance distinguishes this case from that of George v. Alexander, 6 Cold., 641.
In the case of Marine Insurance Co. v. Hodgson, 7 Cranch, 336, Chief Justice Marshall, says: “It may be safely said, that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself .at law, and was prevented by fraud or accident, unmixed with any fault or negligence in himself, will justify an application to a court of chancery.” In Adams’ Equity, 197, it is said: “The rule on this subject, seems to be, that, if, after judgment, additional circumstances are discovered, if their non-discovery lias been caused by fraudulent concealment, the fraud will warrant an injunction.” But we deem it unnecessary to pursue the investigation further, as to the jurisdiction of the Chancery Court.
The defendants have failed to demur or plead, or to move to dismiss the bill, but have answered and taken issue upon the merits. The cause must, therefore, be heard and determined upon its merits. Code, 4321.
*337 As we are satisfied that complainant is entitled to relief upon the grounds already stated, we deem it unnecessary to examine the question as to the effect upon complainant’s rights, of the satisfaction of the judgment of Raiguel & Co., in Confederate money, by Sheid..
The decree of the Chancellor will be affirmed, with costs.